USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBRA ROTHBERG,

                         Plaintiff,

     -against-

PHIL'S MAIN ROOFING, LLC,

                         Defendant,

---

PHIL'S MAIN ROOFING, LLC,

                         Third-Party Plaintiff,

-against-

DHI CONSTRUCTION SERVICES, INC.,
MANUEL H. PEREZ D/B/A ENP HOME
IMPROVEMENT, ENP HOME IMPROVEMENT,
LLC, MITCHELL WILK ARCHITECTURE, P.C.,
and DOUGLAS WILK,

                         Third-Party
                         Defendants.

---

No. 14-cv-10195 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Debra Rothberg commenced the instant action against Defendant Phil's Main Roofing, LLC ("Phil's" or "Defendant") alleging claims for breach of contract and, in the alternative, unjust enrichment. (*See generally* Complaint, ECF No. 1.) Defendant filed a third-party complaint against DHI Construction Services, Inc. ("DHI"), Manuel H. Perez, d/b/a ENP Home Improvement, LLC,[1] Mitchell Wilk Architecture, P.C., and Douglas Wilk. (Def's. Third-Party Compl. ("Def. Compl."), ECF No. 16.)  Presently before the Court is Defendant Phil's

---

[1] Manuel H. Perez, d/b/a ENP Home Improvement, LLC is no longer a party to this action. (See ECF No. 49.)

1

motion to dismiss Plaintiff's Complaint, as well as a motion to dismiss Defendant Phil's Third-Party Complaint, filed by Defendants Mitchell Wilk Architecture, P.C. and Douglas Wilk (collectively, "MWA"). The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. For the reasons stated below, Defendant Phil's motion is GRANTED in part and DENIED in part, and MWA's motion is GRANTED.

## FACTUAL BACKGROUND

Unless otherwise indicated, the facts are drawn from Plaintiff's Complaint ("Pl. Compl."), (ECF No. 1), and Defendant's Third-Party Complaint ("Def. Compl."), (ECF No. 16.). Plaintiff contracted with DHI in connection with the construction of her new home. (Pl's. Mem. in Opp'n. to Def's. Mot. to Dismiss ("Pl. Opp."), ECF No. 82 at 1.) DHI, in turn, entered into a subcontract agreement (the "Subcontract") with Defendant wherein Defendant was to "supply labor, materials, and equipment necessary to properly perform" the roofing work on Plaintiff's home. (Pl. Compl. ¶ 9.) The Subcontract was made expressly subject to a hold harmless agreement (the "Hold Harmless") executed by Defendant. (*Id.* ¶ 10.) Defendant acknowledged receipt of payment by DHI in the amount of $88,000, by Partial Waiver of Lein dated December 1, 2013. (*Id.* ¶ 11.) The Hold Harmless provides for the recovery of attorneys' fees, costs, expenses, and disbursements incurred in the "defense of the underlying claim," in the enforcement of the Subcontract, "and the prosecution of any claim for indemnification by Plaintiff." (*Id.* ¶ 13.) Pursuant to a Confidential Settlement Assignment and Assumption Agreement between Plaintiff and DHI (the "DHI Assignment Agreement"), dated August 12, 2014, DHI assigned all of its rights and obligations under the Subcontract, including the Hold Harmless, to Plaintiff. (*Id.* ¶ 12.)

Defendant completed work on Plaintiff's roof on or about November or December 2011. (*Id.* ¶ 15.) In April 2012, Plaintiff began to observe issues with the new roof, including

"cupping" of the shingles, staining on the trim boards, and misalignment of roof panels.  (*Id.* ¶ 16.)  In May 2012, a Professional Engineer conducted an initial Inspection of the roof and identified certain defects therein.  (*Id.* ¶ 17.)  In June and July 2012, Plaintiff communicated the inspection results to Defendant.  (*Id.* ¶ 18.)  In August and September 2012, Plaintiff permitted Defendant to conduct inspections on the "Roof Systems."  (*Id.* ¶ 19.)  After conducting its own inspection, Defendant admitted to Plaintiff that the "wood cedar roof and standing seam metal roof was defectively installed," and "further conceded" that there may have been other issues with the roofing work as well.  (*Id.* ¶ 20.)  Defendant subsequently represented to Plaintiff that it would correct the errors and omissions in the wood cedar roof and replace the standing seam mental roof at its own expense, but failed to do so.  (*Id.* ¶¶ 21, 22.)  Plaintiff was also deprived of any available product warranties of the roofing system as a result of Defendant's failure to register the products.  (*Id.* ¶ 23.)

In June 2013, Plaintiff retained an independent roof-consulting firm, which identified various defects with the roof, and revealed Defendant's failure "to comply with applicable codes, regulations, manufacturer requirements and standards applicable to the residential construction industry."  (*Id.* ¶¶ 24, 25.)  The firm recommended removal and replacement of the "defective roofing systems."  (*Id.* ¶ 26.)  Later, in December 2013, Plaintiff engaged a qualified roofing contractor to remove and replace the defective roofing system, and incurred various costs, in excess of $75,000, in connection with the removal, and related repairs arising from the same.  (*Id.* ¶¶ 27-29.)

Relevant to Defendant's Third-Party claim, in November 2010, Plaintiff engaged MWA to perform "professional architectural and construction administration services" in connection with the construction of Plaintiff's property.  (Def. Compl. ¶ 14.)  MWA served as "Architect of

3

Record" on this project.  (*Id.* ¶ 15.)

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  When deciding motions under Rule 12(c), courts "employ[ ] the same ... standard applicable to dismissals pursuant to [Rule] 12(b)(6)." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (*quoting Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)) (internal quotation marks omitted).

Under Rule 12(b)(6), on a motion to dismiss for "failure to state a claim upon which relief can be granted," dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662.  A claim is facially plausible when the factual content

4

pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION[2]

### I.   Plaintiff's Breach of Contract Claim

"An assignment is a contractual transfer of a right, interest, or claim from one person to another." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 279–80 (S.D.N.Y. 2013), *aff'd*, 762 F.3d 165 (2d Cir. 2014). In this sense, the assignee assumes all rights of the assignor, "no greater and no less." *In re New Haven Projects Ltd. Liab. Co.*, 225 F.3d 283, 290 n.4 (2d Cir. 2000). In this role, the assignee is permitted to "stand in the shoes" of assignor, in order to enforce the contract it has assumed the rights to. *Sompo Japan Ins. Co. of Am.*, 966 F. Supp. at 279–80. In her capacity as assignee, Plaintiff brings a breach of contract claim against Defendant.

Under New York law, to state a claim for breach of contract a party must allege: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) damages as a result of the breach. *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). Defendant challenges Plaintiff's ability to plausibly allege the fourth factor. Specifically, Defendant argues that because DHI suffered no damages as a result of any alleged breach by Defendant, Plaintiff, standing in the shoes of DHI, cannot assert a breach

---

[2] "A federal court sitting in diversity must apply the choice-of-law rules of the forum State, which in this case is New York ... But, where 'the parties have assumed from the outset that New York law governs, as evidenced, for example, by reliance on New York law to support their respective contentions,' a court may apply New York law based on party consent." *Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 WL 7392214, at *7 (S.D.N.Y. Dec. 21, 2016) (*citing Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991). As such, given the parties rely exclusively on New York law in their briefs, and the Confidential Settlement Assignment Agreement, from which the dispute here arises, identifies the law of this state as governing law, this Court applies New York law. *Id.*; (*see* Decl. of Keith Richman in Supp. of Pl's. Opp. to Def's. Mot. to Dismiss ("Richman Decl."), ECF No. 81, Ex. 1, Confidential Settlement Assignment and Assumption Agreement ("Settlement Agreement"), at 11, Bates No. PLSD000270).

of contract claim for the costs she incurred in connection with the defects associated with the roofing work performed (Plaintiff's "roofing claims"). (*See* Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), at 13, ECF No. 80.) In support of this argument, Defendant asserts that DHI has sustained no damages attributable to Defendant because the Confidential Settlement Assignment and Assumption Agreement specifically excluded payment for any and all roofing claims;[3] thus, Defendant argues, none of the settlement monies paid by DHI to Plaintiff were intended to compensate Plaintiff for Defendant's alleged breach of contract, nor did DHI pay any additional monies or suffer any damages pursuant to the alleged breach. (*See id.* 13-14.) Defendant further contends that the damages and costs incurred by Plaintiff were incurred by her individually, and not by DHI.[4] (*Id.* at 14-15.) In sum, Defendant argues that because the damages asserted were not sustained or paid for by DHI, they are personal damages incurred by Plaintiff, and as such, they cannot form the basis for a breach of contract claim against Defendant. (*See id.* at 12-14.) Notably, Defendant does not cite a single case in support of this particular contention. (*See, e.g.*, Def. Mem. at 13-16) (citing only *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d

---

[3] *See* Settlement Agreement, at 7, Bates No. PLSD000266, ¶ 4) ("[T]he value of the Satisfaction of Mechanic's Liens and the payment of $50,000 is solely in compromise of Rothburg's Contract Claim against DHI and ... does not[] constitute an off-set or settlement of any losses or damages Rothburg has claimed in connection with the Roofing Claim ... and is not a settlement or off-set"). As the Settlement Agreement, and the appended DHI Assignment Agreement, Subcontract and Hold Harmless are incorporated by reference into Plaintiff's Complaint, the Court may take judicial notice of these documents. (*See, e.g.*, Pl. Mem. in Opp. to Def's. Mot. to Dismiss ("Pl. Mem."), ECF No. 82, at 1) (stating documents incorporated by reference into Complaint); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y.2013) ("the Court may consider documents ... incorporated by reference in the complaint [w]hen determining [its] plausibility.")

[4] Defendant makes specific reference to Paragraph 35 of Plaintiff's Complaint, which states: "Plaintiff has and continues to be damaged by Defendant's breaches. Among the damages suffered by Plaintiff are the costs to replace the Defective Roofing Systems, correct and repair damaged trim and siding, connect roof leaders to the drainage system, defend against the underlying claim and other losses and damages as a result of Defendant's acts, omissions and breach of contract." (*See* Def. Mem. at 15.)

383 (S.D.N.Y. 2004), to establish the elements for a breach of contract claim.)[5]

In response, Plaintiff argues that she acquired all of the "rights, obligations, and liabilities arising under the Subcontract" pursuant to the DHI Assignment Agreement, and holds an interest in all claims arising under that document as against Defendant. (*See* Pl. Mem. at 17; *see also* DHI Assignment Agreement, at 16, Bates No. PLSD000275, ¶ 1.)

An assignee may properly sue on an assigned claim. *See Sprint Commc'ns Co., L.P.* v. *APCC Servs., Inc.*, 554 U.S. 269, 283 (2008). Defendant is correct that when, as here, "the assignment touches on the obligations of the other party to the underlying contract," Plaintiff's plausible claims and rights are limited to those that could have been asserted by the assignor within the bounds of that contract. *See State Bank of India v. Walter E. Heller & Co.*, 655 F. Supp. 326, 331 (S.D.N.Y. 1987). To the extent an assignee is entitled to bring claims that could have been asserted by the assignor, it follows that the assignee may collect monies for damages rightfully arising out of those claims. *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 280 (S.D.N.Y. 2013), *aff'd*, 762 F.3d 165 (2d Cir. 2014) ("The[] rights [obtained through an assignment] can include the right of an assignee to bring suit for collection of monies owed to the assignor.")

At bottom, Plaintiff has plausibly alleged claims for damages incurred due to Defendant's material breach of the terms of the Subcontract. (*See, e.g.*, Compl. ¶¶ 31, 33, 34.) Although Defendant argues that DHI incurred no damages resulting from Defendant's alleged breach due to the Plaintiff's agreement to waive roofing claims against DHI, Defendant concedes that DHI paid

---

[5] *See Rosu v. City of N.Y.*, 11-CV-5437 (DAB), 2012 WL 6582534, at *8 (S.D.N.Y. Dec. 13, 2012), *aff'd*, 742 F.3d 523 (2d Cir. 2014) (denying motion to dismiss where defendant cited no case law in support of argument in favor of dismissal because "defendants did not carry their burden"); *see also McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 82 (2d Cir. 2016) (summary order) (finding argument without merit where defendant failed to cite relevant case law in support of argument in favor of dismissal). To the extent Defendant fails to cite relevant caselaw because it is largely unavailable, that is perhaps more reason not to dismiss Plaintiff's claim on this ground.

Defendant for the roofing work, and pursuant to Plaintiff's Complaint, this payment compensated Defendant for a service that Defendant failed to perform in accordance with the Subcontract. (*See* Def. Reply at 17; Compl. ¶¶ 9-36.)   Furthermore, it is reasonable to infer that – prior to the execution of the Settlement Assignment Agreement, which waived Plaintiff's roofing claims against DHI, DHI could have brought a claim against Defendant for breach of the Subcontract, and resulting damages.[6]   Thus, Plaintiff merely assumes DHI's role, and asserts a breach of contract in its place in order to recover damages incurred as a result of Defendant's alleged failure to comply with the agreement. *See McCoy Associates, Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) ("[w]henever there is a breach of contract or the invasion of a legal right [,] the law infers some damage") (internal citations omitted); *see also Sprint Commc'ns Co., L.P.*, 554 U.S. at 286 (noting assignment is complete transfer of injury and resulting claim); *Terra Eng'g & Const. Corp. v. Camp Dresser & McKee, Inc.*, 03-CV-582, 2010 WL 2901606, at *6 (E.D. Wis. July 21, 2010) (assignee has valid breach of contract claim where assignor had valid claim when assignment occurred).   On this basis, the Court finds that Plaintiff has plausibly alleged a claim for breach of contract.

II.   <u>Unjust Enrichment Claim</u>

Plaintiff asserts a claim for unjust enrichment in the alternative to her breach of contract claim.   Defendant argues that Plaintiff cannot allege each of the elements necessary to assert such a claim, and that she is also barred from doing so because there is a valid contract between the parties governing their dispute. (*See, e.g.*, Def. Mem. at 16-20.)

---

[6] The Court notes that Plaintiff argues, when she commenced the arbitration proceeding, she initially asserted claims arising out of the roofing work against DHI, before receiving DHI's assignment of the Subcontract (between DHI and Defendant), and waiving her claims against DHI. (*See* Pl. Mem. at 5.)

It is well-established under New York law that Plaintiff cannot plead an unjust enrichment claim in the alternative, if she alleges breach of an enforceable contract arising out of the same dispute, and the validity of that contract is not challenged. *Kamdem-Ouaffo v. Pepsico, Inc.*, 14-CV-227 (KMK), 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015); *see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (dismissing an unjust enrichment claim because such a claim cannot be pled in the alternative when there is a "valid and enforceable contract governing ... [the] subject matter"); *Tobias v. Notations, Inc.*, 14-CIV-08494 (AT) (GWG), 2015 WL 4654454, at *5 (S.D.N.Y. July 20, 2015) (*citing Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) ("courts generally dismiss claims for quantum meruit on the pleadings ... when it is clear from the face of the complaint that there exists an express contract that clearly controls."); *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n.*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014), *objections overruled sub nom. ImagePoint, Inc. v. JPMorgan Chase Bank*, No. 12-CV-7183 (LAK), 2014 WL 3891326 (S.D.N.Y. Aug. 8, 2014) ("In circumstances where the parties dispute whether there is an enforceable written contract at all ... Rule 8(d)(2) of the Federal Rule of Civil Procedure permits a plaintiff to plead claims for breach of contract and, in the alternative, claims for ... unjust enrichment ... However, where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract the unjust enrichment claim must be dismissed.") (internal citations omitted); *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y.2009) (dismissing unjust enrichment claim, pled in the alternative, noting that "[Plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it ... from seeking quasi-contractual recovery for events arising out of the same subject matter."). Although Defendant challenges whether Plaintiff can bring a plausible claim under the Subcontract

9

for the damages alleged, neither party disputes the validity of that agreement. (*See* Def. Mem. at 19.) For this reason, Plaintiff's unjust enrichment claim is dismissed.

III.     Attorney's Fees Under Hold Harmless Provision

The Subcontract, the contract that originally existed between DHI and Defendant, and was later assigned to Plaintiff through the DHI Assignment Agreement, has a Hold Harmless agreement, and the indemnification provision therein is an additional source of contention between the parties. Specifically, the parties dispute whether Plaintiff is permitted, pursuant to the Hold Harmless, to recover attorney's fees: (1) incurred in the "underlying" action, or arbitration initiated by Plaintiff individually as "project owner," and on behalf of DHI as assignee; and (2) incurred in the instant action to enforce of the Subcontract.

"At the motion to dismiss stage, the court 'should resolve any contractual ambiguities in favor of the plaintiff ... However, if provisions of the contract are unambiguous, the court interprets those provisions as a matter of law," and must interpret the contract in order to effectuate its plain language. *Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, 14-CIV-8727 (NRB), 2015 WL 4486335, at *2 (S.D.N.Y. July 23, 2015) (*citing Provident Loan Soc'y of N.Y. v. 190 E. 72nd St. Corp.*, 78 A.D.3d 501, 502, 911 N.Y.S.2d 308 (1st Dep't 2010). A contract provision is unambiguous when its meaning is "definite and precise ..., unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted).

As an initial matter, for an assignee to recover attorney's fees, the clear language of the contract assignment must provide for the recovery of such fees. *See Nationwide Auction Co. v. Lynn*, 90-CIV-7643 (AGS) (THK), 1996 WL 148489, at *10 (S.D.N.Y. Apr. 1, 1996) (denying

attorney's fees where "[t]he plain language of the assignment simply does not provide for the recovery of attorney's fees"); *Royal Disc. Corp. v. Luxor Motor Sales Corp.*, 9 Misc. 2d 307, 308, 170 N.Y.S.2d 382, 383 (App. Term 1957) ("attorney's fees are not recoverable in the absence of express language in the contract").   Although the DHI Assignment Agreement indicates that Plaintiff assumes "all rights, title and interests in, to and under or arising from the ... Subcontract" it does not expressly indicate that the parties intended to allow Plaintiff, as assignee, to recover attorney's fees incurred by DHI in defense of roofing claims brought against DHI by Plaintiff herself.   (*See* Assignment Agreement at 16.)   Thus, to the extent that DHI incurred legal fees to defend against Plaintiff's claims arising out of the roof work performed by Defendant prior to the execution of the settlement and DHI Assignment Agreement, the Court finds, "in the absence of any evidence to support such an intent by the parties, and in light of the general policy against requiring litigants to bear opponents' costs," Plaintiff's claim for attorney's fees on DHI's behalf as its assignee, for the underlying arbitration she initiated against DHI, is dismissed.   *See Nationwide Auction Co.*, 1996 WL 148489, at *10.

As to the Hold Harmless, the Indemnification Provision provides, in relevant part, that:

To the fullest extent permitted by law, the Subcontractor agrees to *indemnify, defend and hold harmless the Contractor, the project owner,* and any other parties that the Contractor is required to designate as an additional insured, their officers, directors, agents, employees and partners (hereafter collectively "Indemnities") *from any and all claims, suits damages, liabilities,* professional fees, *including attorney's fees,* costs, court costs, expenses and disbursements related to death, personal injuries, property or property damage (including loss of use thereof) *brought or assumed against* any of the Indemnities by any person or firm, *arising out of or in connection with or as a consequence of the performance of the Work of the Subcontractor under this agreement* (contract), as well as any additional work, extra work or add on work, whether caused in whole or in part by the Subcontractor including any subcontractor's therefore and their employees, The Parties expressly agree that this indemnification agreement contemplates: 1) full indemnity *in the event liability is imposed against the Indemnities* without negligence and solely by reason of statute, operation of law or otherwise; and 2) *partial indemnity in the event of any actual negligence* on the part of the

Indemnities *either causing or contributing to the underlying claim in which indemnification will be limited to any liability imposed over and above the percentage attributable to the actual fault* whether by reason of statute, operation of law or otherwise. Where partial indemnity is provided under this agreement, costs, professional fees, attorney's fees, expenses, disbursements etc. shall be indemnified on a pro rata basis. Indemnification under this paragraph shall operate whether or not subcontractor has placed and maintained the insurance specified. *Recovery of attorney's fees, costs*, court costs, expenses and disbursements hereunder *shall include all those attorney's fees*, court costs, expenses and disbursements *incurred in defense of the underlying claim, in the enforcement of this agreement*, in the prosecution of any claim for indemnification hereunder, and in pursuit of any claim for insurance coverage required.

(*See* Richman Decl., Ex. 81-1, "DHI Subcontract Agreement, Hold Harmless Indemnification Provision" ("Hold Harmless"), at 32, BATES No. PL-SD000293.) A party seeking to avail itself of a contractual indemnification provision "must show a specific intent to allow that party to recover under the clause." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) (*citing Bank of N.Y. v. River Terrace Assocs., LLC*, 23 A.D.3d 308, 310, 804 N.Y.S.2d 728, 804 (2005). Additionally, "indemnification clauses are not construed to cover first-party claims unless the contract makes it 'unmistakably clear' that the parties intended so to provide." *See id.* (*citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996) ("absent 'unmistakably clear' language extending indemnification to claims between indemnitor and indemnitee, the indemnification provision must be construed as limited to actions brought by third parties against the indemnitee")); *Bourne Co. v. MPL Communications, Inc.*, 751 F. Supp. 55, 57-58 (S.D.N.Y. 1990) (contract did not contemplate attorney fee indemnification between parties where agreement to indemnify did not expressly mention indemnification for suits between parties and the claims covered by agreement were not exclusively for claims between parties themselves). "Accordingly, the default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with third-party suits, rather than contractual damages or losses between the contracting parties themselves." *BNP*

*Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d at 416 (finding "Plaintiffs' ... indemnification claims fail because none of the indemnification clauses contains language demonstrating an '*unmistakably clear*' intent to cover first-party losses.") (emphasis added).

Interpreting the Hold Harmless provision in light of the aforementioned case law, the Court finds, as a matter of law that the Indemnification Provision was plainly meant to require Defendant to reimburse DHI and enumerated indemnities for attorney's fees and other costs incurred *in defense of claims* asserted in connection with work performed by Defendant. Thus, this provision was written to protect, or hold DHI and other indemnities harmless if they were subject to, and thus had to *defend themselves against*, claims arising out of roofing work performed by Defendant. On this basis, to the extent Plaintiff intends to imply she is entitled to attorney's fees for the underlying action individually – an action initiated by her – her claim is dismissed with prejudice. (*See* Pl. Mem. at 20) (arguing, without elaboration, that Plaintiff may be entitled to attorney's fees as project owner and third-party beneficiary.)

As to Plaintiff's claim for attorney's fees in the instant action, although the Indemnification provision largely contemplates indemnification for liabilities associated with third-party suits, the Court finds that it does permit recovery of "attorney's fees ... *incurred [by Plaintiff as indemnitee] in the enforcement of [the Subcontractor] [A]greement*." (Hold Harmless at 34, Bates No. PL-SD000293.) Given Plaintiff brings a claim for breach of contract, as assignee of DHI, drawing all reasonable inferences in her favor, the Court finds that Plaintiff has plausibly alleged a claim for attorney's fees for the instant action on this basis. Thus the Court dismisses Plaintiff's claims for recovery of attorney's fees for the underlying action on DHI's and her own behalf, but finds that Plaintiff has plausibly alleged a claim for attorney's fees with regard to enforcement of the Subcontract in the instant action.

13

IV.    Defendant's Claim for Contribution as Third-Party Plaintiff

Defendant seeks contribution from Third-Party Defendants Mitchell Wilk Architecture, P.C. and Douglas Wilk ("MWA"). Under CPLR § 1401, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them." N.Y. C.P.L.R. § 1401. However, the New York Court of Appeals has held that "purely economic loss resulting from a breach of contract does not constitute 'injury to property' within the meaning of [the] statute." *Bellis v. Tokio Marine & Fire Ins. Co.*, 93-CIV-6549 (DAB), 2002 WL 193149, at *20 (S.D.N.Y. Feb. 7, 2002) (*citing Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28 (1987)). Thus, contribution is not permitted "between two contracting parties whose only potential liability to the [third-party] is for the contractual benefit of the bargain." *Id.* Instead, "the existence of some form of tort liability is a prerequisite to application of the statute." *Id.*

Defendant argues that because Plaintiff pleads that she sustained personal damages as homeowner, that those claims sound in tort rather than breach of contract, and as such, Defendant should be able to allege a claim for contribution against MWA. (*See* Def. Mot. in Opp. to MWA's Mot. to Dismiss ("Def. Opp. to MWA"), at 7, ECF No. 92.)[7] Relatedly, Defendant claims that, because Plaintiff asserts claims of negligence and professional malpractice in a state court action against MWA, it is entitled to seek contribution from MWA.

In determining whether an action lies in contract or in tort, courts consider the nature of the damages sought by the plaintiff in the main action. *See Trump Vill. Section 3, Inc. v. N.Y. State*

---

[7] Although on notice that its position may be contrary to case law, Defendant fails to cite a single legal citation in support of its contention that it is entitled to allege a claim for contribution against MWA, with the exception of a citation to *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28 (1987)), which it cites for the unremarkable proposition that contribution is only available where tort liability is asserted. (*See* Def. Opp. at 4-8); *see Rosu*, 2012 WL 6582534, at *8 (denying motion to dismiss where defendant cited no case law in support of argument in favor of dismissal because "defendants did not carry their burden").

*Hous. Fin. Agency*, 307 A.D.2d 891, 897, 764 N.Y.S.2d 17 (2003) ("Although plaintiff's complaint includes causes of action against the codefendants for professional malpractice, in addition to breach of contract, the crucial point here is that the damages sought by plaintiff on all of its causes of action are merely for economic loss. Where a plaintiff's direct claims against a codefendant seek only a contractual benefit of the bargain recovery, their tort language notwithstanding, contribution is unavailable"); *Dormitory Auth. of State of N.Y. v. Scott*, 160 A.D.2d 179, 180, 553 N.Y.S.2d 149, 151 (1990) (allegations that services had been performed in a negligent manner did not transform economic loss claim arising out of contractor's alleged faulty performance of services for construction project into tort claim); *see also Sound Refrigeration & Air Conditioning, Inc. v. All City Testing & Balancing Corp.*, 84 A.D.3d 1349, 1350, 924 N.Y.S.2d 172 (2011) (finding "the necessary predicate tort liability for a contribution action remains in the case" where plaintiff "in main action" asserted "a cause of action to recover damages for negligence based on party's alleged conduct in causing injury to property through the negligent performance of its work").

Indeed, in a similar suit that appears to have been brought by the same Plaintiff in this action, the Appellate Division of the Third Department reversed the lower court's decision and dismissed a third-party claim for contribution although Plaintiff's claims included causes of action for negligent performance and professional malpractice, specifically because Plaintiff sought purely economic loss. *See Rothberg v. Reichelt*, 270 A.D.2d 760, 762, 705 N.Y.S.2d 115, 117–18 (2000) ("plaintiff's complaint reveals that she is seeking to recover for a purely economic loss – namely, the cost of repairs and the difference in value between what defendants were contractually obligated to provide and what plaintiff actually received .... In short, plaintiff is seeking the benefit of her contractual bargain and, as such, no claim for contribution lies").

15

"Economic loss" refers to the "benefit of the bargain" struck between two parties, or the service that one party sought from the other, pursuant to their contract. *Grinnell v. G. Beames and Sons, Inc.*, 859 N.Y.S.2d 903, 2008 WL 880299, at *2 (Cortland Cnty. Sup. Ct .2008). "This category of damages encompasses losses stemming from ... performance, which "go to the expectancy of the parties." *Id.* Thus, where plaintiff seeks the enforcement of the bargain, the action is "one for breach of contract rather than tort, and no contribution is available." *Barbagallo v. Marcum LLP*, 11-CV-1358, 2012 WL 1664238, at *11 (E.D.N.Y. May 11, 2012); *id.* (*citing Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552, 593 N.E.2d 1365, 1369 (1992) ("where plaintiff is essentially seeking enforcement of the bargain, the action is considered one for breach of contract rather than tort, and no contribution is available") (quotation marks omitted). Even in instances involving defective construction, where the plaintiff seeks to recover for economic loss resulting from a contract breach, courts have found that this fails to constitute "injury to property" under New York law. *Sound Refrigeration & Air Conditioning, Inc.*, 84 A.D.3d at 1350, 924 N.Y.S.2d at 173; *see Bd. of Educ. of Hudson City Sch. Dist.*, 71 N.Y.2d at 26, 517 N.E.2d 1360 (in breach of contract action for economic loss, against the architectural firm that designed a school construction project, loss did not constitute "injury to property" under statute, and architect could not seek contribution against general contractor); *Burnell v. Morning Star Homes, Inc.*, 114 A.D.2d 657, 494 N.Y.S.2d 488 (1985) (loss arising out of improper repairs made to home was "properly characterized as 'economic loss' which is recoverable only as damages which flow from breach of contract; only where physical damage results from accident caused by unduly dangerous product should tort liability be allowed.")

Plaintiff's alleged losses arise out of a "material[] breach" of the Subcontract Agreement stemming from allegedly improper work performed on Plaintiff's roof and the resulting damages,

including those sought for repair and replacement, are for economic loss. (*See* Pl. Compl. ¶ 31; 34.) On this basis, Defendant cannot seek contribution, and its claim for contribution is thus dismissed with prejudice. Defendant's request to amend its Third-Party Complaint is denied as futile.

As to Defendant's common law indemnity claims against MWA, its decision not to oppose MWA's arguments with regard to these claims are deemed purposeful, are considered abandoned, and are dismissed with prejudice. *See Tuman v. VL GEM LLC*, No. 15-CV-7801 (NSR), 2017 WL 781486, at *7–8 (S.D.N.Y. Feb. 27, 2017) (*citing Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618 (S.D.N.Y. 2015) ("abandonment constitutes an[ ] independent ground for dismissal").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint is GRANTED in part and DENIED in part. Plaintiff's claims for unjust enrichment and attorney's fees incurred in the underlying action are dismissed. MWA's Motion to Dismiss Defendant's Third-Party Complaint is GRANTED in its entirety, and Mitchell Wilk Architecture, P.C., and Douglas Wilk are dismissed from this action. All remaining parties are directed to appear for a status conference on May 4, 2017 at 11:00 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 77 and 86.

Dated:   March 24, 2016          SO ORDERED:
       White Plains, New York

                                      NELSON S. ROMÁN
                                      United States District Judge